# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

ROGER T. PRAY,

       Plaintiff,

vs.                                        No. CIV 03-685  JB/LFG

SHARON CABALLERO, in her individual
capacity as President of the New Mexico
Highlands University,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment (Doc. 16).  The primary issues are: (i) whether the Plaintiff, Roger T. Pray ("Pray"), has a binding and enforceable contract with New Mexico Highlands University ("Highlands") that it could not, for the term of the contract, terminate him "except for cause"; and (ii) whether the contract and regulations incorporated in the contract create a right to different or greater procedural due process for nontenured, temporary employees than for permanent and tenured faculty.  Because Pray has a binding contract, and because the contract provides the rights that Pray contends that it does, the Court will deny the motion for summary judgment and grant Pray summary judgment on his breach of contract claim and certain issues raised by his Section 1983 claim.

## FACTUAL BACKGROUND

The parties do not dispute the material facts and circumstances of this contract termination. Pray begins his Response to the motion for summary judgment by admitting the facts stated in

Defendant Sharon Caballero's statement of material facts.  See Response ¶¶ 1-11, at 2.  Accordingly, someone is entitled to summary judgment on at least some of the liability issues.

The New Mexico Legislature founded Highlands in 1893.  Highlands was initially called the New Mexico Normal School, but in 1941, the Legislature authorized the institution to adopt its current name.  Highlands is located on a 175-acre campus in Las Vegas, New Mexico and offers undergraduate and graduate degrees primarily in education and liberal arts.

An independent Board of Regents governs Highlands, and the Defendant, Dr. Sharon Caballero ("Caballero"), is the President.  Highlands is a land grant institution under the New Mexico Constitution and state law.  See N.M. Const. Art. XII, §§ 11, 12 (1992 Repl. Pamp.); N.M. Stat. Ann. §§ 21-3-1 to 21-3-28 (Michie 1996).  In recent years, Highlands has faced severe financial problems.

On August 2, 2002, Pray entered into a Temporary Contract with Highlands.  See Temporary Contract.  The Temporary Contract's term was from July 1, 2002 to June 30, 2003.  See id.  Under his contract's terms, Pray held a temporary appointment as a Highlands faculty member.  See Temporary Contract; Regulations ¶ 4.

The Temporary Contract reads: "In accordance with the Statutes of the State of New Mexico and the Bylaws and regulations of the University Board of Regents, you are hereby appointed, in a temporary status with no intention of renewal, Visiting Associate Professor of Behavioral Sciences and Coordinator of the Criminal Justice Program[.]"  Temporary Contract.  After the recital of the salary applicable to this appointment, the contract incorporates Highlands' tenure policy, because Highlands uses the same form contract for permanent and tenured appointments.  See id.

The Regulations Concerning Tenure of Faculty Members of New Mexico Highlands

2

University ("Regulations") are part of the Temporary Contract.   See id. (incorporating the "regulations of the Board of Regents").   Termination of a temporary appointment before the expiration of a contract required consideration, before termination, by both a faculty committee and the Regents.  The Regulations state: "**Termination for cause** of a permanent appointment and of a temporary appointment or probationary appointment prior to the expiration of a contract shall be considered by both a faculty committee and the Board of Regents."   Regulations ¶ 11 (emphasis added).  Before any such hearing, Highlands needed to inform the faculty member facing possible dismissal of the charges against him and afford him a hearing where he could present a defense.  See id.

The Regulations also allow the termination of permanent faculty if necessary because of curtailment in Highlands' financial support:

> **In all cases of permanent appointment**[,] it shall be the understanding that only such salary reduction can subsequently be made as can be shown to be necessary, due to grave curtailment in the financial support of the institution.  It shall be understood, however, that when and if a department of the institution should be curtailed or abolished, the faculty member concerned may be dismissed.

Id. ¶ 12 (emphasis added).  Highlands acknowledges that there was an omission in the Regulations. They should have referred to all appointments, not merely permanent appointments, in explaining that they were subject to salary reduction or dismissal in the face of a financial curtailment to the institution.  Caballero contends that this omission was an oversight, but offers no competent evidence to support the assertion in her Reply.  Caballero argues that Highlands never intended to create greater rights for temporary faculty members than for permanent, tenured appointments to faculty.

When Pray entered into the contract with Highlands, Pray relied on the plain meaning of the Regulations and had an expectation of continued employment for the duration of his contract absent

a "for cause" finding after notice and after a hearing.  <u>See</u> Affidavit of Roger T. Pray ¶ 4, 6, at 1-2 (executed October 31, 2003).  Pray relied on the contract and Highlands' Regulations to his detriment.  <u>See</u> <u>id.</u>

On November 15, 2002, the Highlands University Regents ("Regents") passed a Resolution Establishing a Reduction in Force Policy for all University Employees.  <u>See</u> Resolution Establishing a Reduction in Force Policy for all University Employees ("Reduction in Force"); Affidavit of Dr. Sharon Caballero ¶ 4, at 2 (executed September 25, 2003).  This Reduction in Force "superced[ed] all other existing reduction in force or layoff policies . . ." and was "**applicable to all University employees."**  Reduction in Force, introductory paragraphs;(emphasis added).  The Regents passed the Reduction in Force for "the best interests of the University" and because it was necessary for the "University's fiscal condition and validity."  Reduction in Force, introductory paragraphs; Caballero Aff. ¶ 3, at 1.  Caballero's affidavit establishes that the monetary shortfall which necessitated the reduction in force was in the neighborhood of $3.2 million.  <u>See</u> <u>id.</u> ¶ 8, at 2.

On December 3, 2002, Highlands terminated Pray's Temporary Contract.  <u>See</u> Complaint ¶ 16, at 3.  Pray's termination was not for cause.  <u>See</u> Complaint ¶ 28, at 4; Answer ¶ 5, at 2 (admitting same).  Highlands terminated Pray's Temporary Contract because of the Reduction in Force.  <u>See</u> Caballero Aff. ¶ 8, at 2.  Highlands paid Pray an additional sixty days of compensation pursuant to the Reduction in Force; he received compensation through February 4, 2003.  <u>See</u> Complaint ¶ 18, at 3.  Highlands did not afford Pray notice and/or a hearing and opportunity to be heard before or after his termination.  <u>See</u> <u>id.</u> ¶ 31, at 4-5.

Neither a faculty committee nor the Regents considered the proposed termination.  <u>See</u> Complaint ¶ 31, at 4-5; Answer ¶ 1, at 1 (admitting same).  Highlands did not hold a hearing or

otherwise afford Pray an opportunity to present a defense.  See Complaint ¶ 31, at 4-5; Answer ¶ 1, at 1 (admitting same).

### STANDARDS FOR DECIDING A MOTION FOR SUMMARY JUDGMENT

Summary judgment is available when no genuine issue of material fact exists which needs to be resolved at trial and the movant is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56. The moving party bears the initial burden of informing the Court of the basis of its motion.  Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party shoulders the "initial burden to show that there is an absence of evidence to support the nonmoving party's case."  Thomas v. IBM, 48 F.3d 478, 484 (10th Cir. 1995).  If the moving party meets this burden, it then falls to the non-moving party to "identify specific facts that show the existence of a genuine issue of material fact."  In this regard, the non-movant must do more "[t]han simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

### LEGAL AND FACTUAL ANALYSIS

Reduced to its essence, Caballero's motion argues that the Court should approve of her termination of Pray's temporary teaching contract with Highlands because of the declared financial exigency that it faced.  Caballero argues that this financial crisis, coupled with the Regents' Resolution that authorized her to terminate Pray's temporary teaching contracts and with Highlands' Regulations which permit the termination of the contracts of permanent employees under such circumstances, entitles her to summary judgment.  Caballero's reading of the Regulations, however,

is not consistent with their plain meaning.

**I.      THE PARTIES ASSUME THAT NEW MEXICO LAW AUTHORIZED HIGHLANDS TO IMPOSE A REDUCTION IN FORCE FOR FINANCIALLY EXIGENT CIRCUMSTANCES, BUT HIGHLANDS DID NOT TAKE FULL <u>ADVANTAGE OF THE AUTHORITY GIVEN TO IT</u>.**

The parties do not dispute that New Mexico substantive law provides that a state university can pass a resolution allowing a reduction in force for financially exigent circumstances.  For purposes of this motion, the Court will thus assume that Highlands had the authority to adopt a resolution necessitating a reduction in force for financially exigent circumstances.  Moreover, Pray does not dispute the Regents' authority to adopt and implement reductions in force through Caballero in her role as president of the university.

Pray also admits that the Regents passed the Resolution discussed above.  There is no question that Caballero relied on the Resolution to terminate Pray's contract.  The issue, however, is whether the Resolution has force and effect in regard to Pray's Temporary Contract.

Caballero's arguments rest on a weak foundation.  Caballero admits that, by its plain language, the Regulations do not include temporary, non-permanent, non-tenured faculty members within the scope of "Permanent appointments."   Thus, Highlands did not exercise its authority to encompass temporary faculty.

Accordingly, the Regents' authority to reduce the university's work force did not give Caballero freedom to ignore contractual rights or protected property interests arising therefrom.  Nor did it give the Regents the power post hoc to impair a duly executed contract that contains within it procedural protections from termination as does Pray's contract.

Both parties agree that the Court can and should determine the Temporary Contract's and the

Regulations' purpose, meaning, and intent from those documents' unambiguous language.  See Transcript of Hearing, Excerpts at 2, lines 2 - 14.  The parties introduce no extrinsic evidence for that task.  The Court agrees with the parties that it can read and interpret the Regulations' language, and when it does so, it finds that the plain meaning does not extend the Regents' power to terminate contracts on the basis of financial exigency to temporary employees.

Caballero argues that the Resolution should apply to temporary employees, because the Temporary Contract's language does not expressly exempt temporary employees from a Reduction in Force.  Caballero's argument, however, turns the proper analysis on its head.  The Court does not agree that, if temporary employees were specifically exempt from paragraph 12 of the Regulations, the contract would record that point.  The more important observation is that the Temporary Contract does not say that the Regents can terminate the contract because of a reduction in force. If Highlands did not want temporary employees to have any rights for the duration of the term of the contract, and wanted the temporary employees to be subject to paragraph 12 of the Regulations, Highland needed to so specify, either in the Regulations or in the Temporary Contract.

The Court's construction of the Temporary Contract does create different rights, and at least for the duration of the temporary contract, greater due process,  for temporary employees than there are for permanent faculty because of an omission in the Regulations.  The Regulations do not authorize the termination of a temporary contract based on a declared financial exigency.  By the Regulations' plain language and meaning, financial exigency was a basis for reducing a permanent faculty member's salary and for dismissing a permanent faculty member.  See Regulations ¶ 12. Caballero's argument that the reach of paragraph 12 extends to temporary employees, even though it only mentions permanent employees, is contrary to basic contract interpretation.  Under a plain

reading of the Regulations, the termination of temporary contracts is limited "for cause" circumstances, which no party contends are present here.

Caballero stresses the statutory authority that New Mexico state law confers on the Regents and, by their Resolution, upon the President, to take the drastic measure of dismissing or cutting the salary of staff, including faculty, in the face of a financial emergency.  And Pray does not question the Board's fundamental authority to take that step.  See Response at 5-6.  Caballero goes further, however, and suggests that, because the Temporary Contract references state law, which confers the right on the University to take special action to terminate existing faculty contracts in the face of a financial crisis, this state law must take precedence over the regulations relating to tenure.  The Court does not, however, see any conflict between state law and the Regulations that it needs to resolve. Highlands did not take full advantage of all the authority that state law gave it.

The New Mexico Constitution provides for schools, colleges, universities, and educational institutions, and those institutions are under the state's exclusive control.  See N.M. Const. art. xii, § 3.  The Regents for each institution shall control and manage the universities.  See N.M. Const. Art. XII, § 13; N.M. Stat. Ann. § 21-3-4 (Michie 2003)(requiring that a board of regents for each institution controls and manages the universities); N.M. Stat. Ann. § 21-3-7 (Michie 2003)(requiring that regents have full and complete power and control over their schools).  Control means "control over the curriculum, disciplinary control, financial control, administrative control and, in general, control over all of the affairs of the school."  Prince v. Board of Ed. of Central Consolidated, 88 N.M. 548, 554, 543 P.2d 1176, 1182 (1975).[1]  Regents thus have complete power over their respective

---

[1]  Neither the language nor the holding in Prince v. Board of Ed. pertains to the issues before this Court on this motion.  In Prince v. Board of Ed., the plaintiff challenged the school district's power to build a school on tribal lands leased to it as a violation of the New Mexico Constitution's

universities, including the authority to have a reduction in force if necessary for the financial control of universities.

Highlands contends that the New Mexico Administrative Code lends further legal support for the termination of temporary employees, without notice, during financially stressful time for the State. Similar to the authority that the regents have to control a university's financial affairs, there is analogous power for New Mexico governments to, in their administration, lay off employees if there is a "shortage of work or funds." N.M. Admin. Code tit. 1, § 7.10.9A (2003)("An agency may lay off employees only for deletion of positions, shortage of work or funds, or other reasons that do not reflect discredit on the services of the employees."). The Administrative Code further provides that "[n]o employee in career status shall be laid off while there are term, probationary, emergency or temporary status employees . . . in the same organizational unit." N.M. Admin. Code tit. 1, § 7.10.9E (2003). The Administrative Code does not expressly provide for notice for temporary employees, but the governmental agency must give those in "career status" fourteen days notice. N.M. Admin. Code tit. 1, § 7.10.9F (2003).

Caballero contends that the Court's construction of the Regulations is inconsistent with the state's regulations authorizing reductions in force for government agencies in New Mexico under appropriate circumstances. See N.M. Admin. Code tit. 1, § 7.10.9E, F (2003). It would certainly be a sensible principle for universities faced with severe curtailment of financial support to have the

_____

requirement that the State maintain "exclusive control" over the schools. See id. at 553-54, 543 P.2d at 1181-82. The Supreme Court of New Mexico rejected the attack: "The purpose of this section of our constitution is to insure exclusive control by the state over our public educational system, and to insure that none of the state's public schools ever become sectarian or denominational." Id. at 554, 543 P.2d at 1182. The court in Prince v. Board of Educ. did not suggest, and given the Supremacy Clause, it could not suggest, that the power of a state university's Regents to manage the institution's financial affairs permits or authorizes them to violate a person's federally protected property rights.

right to make cuts in staff necessary to achieve a balanced budget, and the first place to start may be with temporary staff. Unfortunately for Highlands, however, Caballero cannot reasonably rely on the New Mexico Administrative Code.

The Code's provisions upon which Caballero rely apply to state agency employees and do not pertain to state university employees. The Code makes the distinction throughout between agencies and universities. See N.M. Admin. Code tit. 21, § 1.2.9.5(a)(2003)("Shipper is an employee of a university or state/federal . . . agency . . . ."); N.M. Admin. Code tit. 18, § 20.2 (2003)("This Rule affects local governments, state agencies, law enforcement agencies, schools/universities, and not-for-profit agencies."). Moreover, if these provisions of the NMAC applied here, the Court would have expected Caballero to have shown the Court the layoff plan she prepared pursuant to N.M. Admin. Code tit. 1, 7.10.9(B). See N.M. Admin. Code tit. 1, 7.10.9(B)(requiring that "an agency . . . identify organizational units for purposes of a layoff and submit a written plan to the Board."). Caballero has made no such showing, and there is no suggestion that Caballero could make such a showing.

Caballero has not established that the plain meaning of the Regulations permitting the termination of a permanent appointment in times of financial exigency extends in its application to temporary appointments. Indeed, Caballero appears to concede that the Regulations' plain language reads otherwise. Caballero's Response at 5 (stating that the "section of the Regulations pertaining to salary reduction of faculty" contains "omission of a specific reference to temporary employees . . . ."). Without more, Caballero's concession and the Regulations' express language counsel the conclusion that termination of faculty contracts on the basis of financial exigency does not extend to the contracts of temporary employees such as Pray.

Unable to do much with the language of the Temporary Contract and of the Regulations,

10

Caballero forcefully contends that a temporary employee cannot have "greater protection" than a permanent employee because it is "illogical."  Caballero's Response at 5.[2]  While, from a public policy standpoint, logic might suggest that Highlands would want to write its contracts and Regulations so that it had the most flexibility, Highlands did not do so.  Nevertheless, while the Court is confident of its construction of the contract and the Regulations, it would pause about adopting a construction that makes absolutely no sense.  The remaining question is thus whether any sound policy exists to support Highlands' apparent choice, whether intentional or unintentional, to give a university employee under a temporary contract "greater protection" from layoff in times of financial exigency than other, more established university employees.

Pray suggests reasons why the Regulations omit temporary employees.  Caballero contends that these reasons are a fabrication.  While it is true that these proffered reasons are Pray's version of what rationale led Highlands to exclude temporary employees from the Regulations governing tenured faculty, specifically, the provision authorizing their dismissal or reduction in pay under

---

[2] Caballero cites Bauer v. College of Santa Fe, 2003-NMCA-121, 78 P.3d 76, 78-79 (Ct. App. 2003), but if that case points in either direction, it supports Pray's construction of the Temporary Contract and the Regulations.  As with the other federal cases upon which Caballero relies, the issue in Bauer v. College of Santa Fe was the right to reappointment.  At the College of Santa Fe, as at Highlands, there were two types of appointments: a "Probationary appointment" and "Appointments with continuous tenure."  The "Criteria for Appointment" section of the Faculty Handbook stated that "[f]aculty members will be appointed or reappointed subject to their professional qualifications . . . ."  2003-NMCA-121, ¶ 7, 73 P.3d at 78.  Bauer, a Probationary appointment, argued that the college was required to reappoint him.  The New Mexico Court of Appeals rejected that contention "as contrary to the unambiguous language" of the Handbook and "contrary to common sense." Id. at ¶ 8, 73 P.3d at 78.  Unlike Highlands' Regulations, the College of Santa Fe's "Handbook clearly states that CSF can terminate a tenured or a probationary appointee before the end of the appointment because of financial exigency." Id. at ¶ 11, 73 P.3d at 79.  The Court of Appeals declined to adopt an unreasonable interpretation that was inconsistent with the language in the Handbook and entered summary judgment for the college. See id. at ¶ 12, 73 P.3d at 79.

financially exigent circumstances, and that Caballero insists that the omission was a mistake, Pray's suggestion does affirm that the construction he advances is not nonsensical.

Pray offers the suggestion that, only by guaranteeing temporary employees a full year's employment with procedural due process before termination, would anyone accept such a short term of employment. By definition, faculty with permanent appointments at the university have a longer history and more established relationships with the institution. They are a part of the university family. The university's interests are their interests. In times of financial crisis, the university can reasonably expect permanent employees to share the university's pain. Arguably, Highlands' Regulations reflect this relationship.

Conversely, an employee with a temporary appointment has limited ties to the institution. He or she is a person whose relationship with the university is, by definition, short term. Unless such an employee has "greater protections," at least for the duration of his or her short term contract, the university would likely have difficulty attracting persons to accept such contracts.

Where the term of employment is limited to a year, as was Pray's contract, it is reasonable for the contracting employee to be able to rely on the guarantee that, short of "for cause" termination, attendant with notice and hearing, employment is secure for the contract's duration. That, after all, is the contracting parties' mutual promises – one promises to perform and the other promises to pay, both for the contract's duration. The Temporary Contract and the Regulations do no more than that for temporary employees, but they also do not provide less protection than that. The "protections" that a contract, and the Regulations that are a part of the contract, afford a short term employee are "greater," but only for the contract's limited duration. In contrast, in the case of tenured faculty, the promises are for all time.

12

The Court thus cannot say that sound policy reasons do not exist to support a conclusion that, at least for the duration of a temporary contract, the holder of such a contract may indeed have "greater protections" than permanent faculty.  Caballero points out that all faculty contracts with Highlands are appointments of one-year's duration or less; it is only through the tenure process that faculty gain the right to expect reappointment, absent a hearing and evidence which would support a conclusion of "just cause" to terminate them from employment.  Unfortunately for Caballero, Highlands did not write its Regulations or temporary contracts that way.  Indeed, the Regulations refer to "Permanent appointments," suggesting that there is a significant difference between the one year contracts that tenured employees get and the ones that temporary employees receive.

Given the plain language of the Temporary Contract and the Regulations, and the existence of a sound basis for them being written as they are, the Court will deny Caballero's motion for summary judgment.

## II.  HIGHLANDS TERMINATED PRAY, ON A MISAPPLICATION OF ITS REGULATIONS AND WITHOUT NOTICE  AND HEARING.

Pray contends that, because the tenure Regulations address the termination of only permanent faculty members as a result of financial constraints, Highlands cannot remove temporary employees by a reduction in force without there being a breach of contract.  Under the language of the Regulations, which are part of the Temporary Contract, Highlands cannot terminate a temporary faculty member before the end of the end of his or her contract term except for cause, and that both the faculty committee and the Regents must consider a proposed termination "for cause."  Complaint ¶ 28-29, at 4.  Given the Court's interpretation of the Regulations and Temporary Contract, the Court cannot dismiss Pray's breach of contract claim.

13

Caballero tries to avoid a breach of contract claim by contending that Pray "reads into" the unambiguous Temporary Contract additional or special rights for temporary employees. Caballero asserts that the Temporary Contract does not exempt temporary employees from layoff in a financial emergency and that Pray ignores the absence of any extra protection in his contract: "If temporary employees were specifically exempt from ¶ 12 of the Regulations, that point would be recorded in the contract." Caballero's Response at 8. Caballero contends that Pray's construction would fashion a one-sided agreement that the Regents did not contemplate. Caballero's Response at 7.

Settled principles, reiterated in <u>Ponder v. State Farm Mutual Automobile Ins. Co.</u>, 2000-NMSC-033, ¶ 11, 12 P.3d 960, 964 (2000), guide contract interpretation in New Mexico. Although <u>Ponder v. State Farm Mutual Automobile Ins. Co.</u> involved interpretation of an insurance policy, the Supreme Court applied "the same principles which govern the interpretation of all contracts." <u>Id.</u>, at ¶ 11, 12 P.3d at 964 (internal quotation marks and citation omitted).

> When discerning the purpose, meaning, and intent of the parties to a contract, the court's duty is confined to interpreting the contract that the parties made for themselves, and absent any ambiguity, the court may not alter or fabricate a new agreement for the parties . . . . It is black letter law that, absent an ambiguity, a court is bound to interpret and enforce a contract's clear language and cannot create a new agreement for the parties.

<u>Id.</u> Moreover, "[a]bsent ambiguity, provisions of [a] contract need only be applied, rather than construed or interpreted." <u>Id.</u>

In <u>Smith v. Tinley</u>, the Supreme Court of New Mexico addressed language in a default provision in a partnership agreement. <u>See</u> <u>Smith v. Tinley</u>, 100 N.M. 663, 674 P.2d 1123 (1984). Basic to any contract interpretation is ascertaining the parties' intent in drafting the agreement. <u>See</u> <u>id.</u> at 664, 674 P.2d at 1124. The provision at issue in that case stated that, if either party "cannot"

make the required payments, then that party was in default and must deed his interest to the remaining party.  Appellant Tinley argued that "cannot" in the provision language meant that the ability to pay was situation dependent and not a definite requirement of the agreement.  See id. at 665, 674 P.2d at 1125.  The Court noted that the appellant's argument would "contravene the rule that a reasonable interpretation of a contract is favored."  Id. at 665, 674 P.2d at 1125.  "[A]n interpretation rendering a contract such that reasonable men would not enter into it is disfavored."  Id., 674 P.2d at 1125. See Louisiana Power & Light Co. v. Town of Arcadia, 119 F. Supp. 818, 820 (W.D. La. 1954)(holding that contracts should not be interpreted to require absurd conditions); Stock v. Grantham, 1998-NMCA-081, ¶ 17, 964 P.2d 125, 132 ("Extrinsic evidence does not create ambiguity in a contract when the alternative interpretation of the contract supported by the evidence would require a party to perform an act that both parties must have known to be impossible at the time the contract was executed.") cert. denied, 125 N.M. 322, 961 P.2d 167 (1998).

As noted earlier, the parties agree that the Court can determine their purpose, meaning, and intent from the Temporary Contract's unambiguous language and the Regulations.  Contrary to Caballero's contention that Pray is reading additional rights into his contract, Pray is relying upon what is there, including what is in the Regulations, which the constract incorporates.  It is Caballero that is reading into the contract provisions, from the Regulations, language that, by its plain meaning, are applicable to permanent appointments, not to temporary employees.

There was no need for the Temporary Contract to have specifically excluded paragraph 12 of the Regulations from application to temporary employees when the only reference to any kind of appointment in paragraph 12 was to permanent employees.  The Regulations' plain meaning, and the express application of paragraph 12 thereof to permanent appointments, renders that paragraph

inapplicable to temporary appointments.  Thus, by its own terms, the paragraph does not apply to temporary appointments.  Expresssio unius est exclusio alterius.  See Bettini v. Las Cruces, 82 N.M. 633, 635, 485 P.2d 967, 969 (1971).

The contract language conferred different rights than that granted to permanent employees and, at least for the duration of the term of the contract, greater rights.  Pursuant to a plain reading of the Regulations, Caballero's application of inapplicable provisions to Pray was a breach of contract.  Because there was an enforceable promise to provide procedural due process to a temporary employee of Highlands before termination, Pray has proven a breach of contract claim. Accordingly, the Court will not dismiss Pray's breach of contract claim.

## III.   PRAY'S EMPLOYMENT CONTRACT CREATES A PROPERTY INTEREST UNDER STATE LAW ENTITLING HIM TO PROCEDURAL DUE PROCESS IN THE FORM OF NOTICE AND HEARING BEFORE TERMINATION THEREUNDER.

Pray also contends he has a constitutionally protected property right based on the Temporary Contract.  It is undisputed that Highlands provided him with no notice and hearing before it terminated his contract.  The question is whether the termination violated Pray's clearly established federal procedural due process and property rights.  See Complaint ¶ 28-31, at 4-5.

The parties agree that state law determines whether a constitutionally protected property interest in employment, to which due process attaches, exists.  See Lighton v. University of Utah, 209 F.3d 1213, 1221 (10th Cir. 2000).  Here, the state law at issue is the Temporary Contract that the parties entered and the Regulations that the Temporary Contract makes part of the Temporary Contract's terms.  A constitutionally protected employment interest may arise from regulations and/or contracts.  See Anglemyer v. Hamilton County Hosp., 58 F.3d 533, 536 (10th Cir. 1995).

Prior cases have questioned whether a non-tenured professor has a property interest under New Mexico law.  See Clinger v. New Mexico Highlands University, 215 F.3d 1162, 1167 (10th Cir. 2000)(citing Jacobs v. Meister, 108 N.M. 488, 775 P.2d 254, 259-61 (Ct. App.), cert. denied, 108 N.M. 488, 775 P.2d 254 (1989)); Bunger v. University of Oklahoma Board of Regents, 95 F.3d 987, 990 (10th Cir. 1996)("Tenured professors in Oklahoma possess a property interest in their continued employment that is protected by the Due Process Clause.  However, untenured professors in Oklahoma do not possess a legitimate claim of entitlement to their reappointment absent a specific contractual guarantee to that effect.")(cited in Clinger v. New Mexico Highlands University, 215 F.3d at 1167).

But, as a general proposition, public employees who may be disciplined, up to and including termination, only for just cause enjoy constitutionally protected employment interests.  See Bailey v. Kirk, 777 F.2d 567, 574 (10th Cir. 1984)(holding "that a public employee, who could not be suspended except for cause, had a property interest in continued employment, even though the city's suspension provisions may not provide for a right of appeal."); Gilbert v. Homar, 520 U.S. 924, 928 (1997)(assuming without deciding that public employee not subject to suspension without probable cause possesses a protected property interest).  "[I]f a statute, regulation, or policy . . . restricts the reasons for discharge to 'just cause shown,' then the employee has a right to continued employment until such grounds or causes are shown."  Campbell v. Mercer, 926 F.2d 990, 993 (10th Cir. 1991)(internal quotes omitted).  "The hallmark of property [interest] . . . is an individual entitlement grounded in state law which cannot be removed except . . . for cause." Logan v. Zimmerman Brush Co., 455 U.S. 422, 430 (1982) (internal quotation marks and citation omitted).

The federal case law upon which Highlands relies, which interprets faculty entitlement to

reappointment, do not specifically address the question here and is largely inapplicable to the issues presented here.  In Clinger v. New Mexico Highlands Univ., and in the cases cited in Clinger noted above, the Tenth Circuit found the property interest to be "dubious" because the plaintiff was alleging an entitlement to reappointment or continued employment.  See 215 F.3d at 1167 (citations omitted). Neither Clinger nor the cases cited therein pertained to or addressed the property interest under state law that an employee holds with an existing contract in force executed by the parties; the issue here is whether there is a property interest for the duration of that contract.

Caballero concedes that the facts of this case present a unique situation, but argues that both reappointment and termination of an existing contract in emergency financial circumstances involve an individual's right to continued employment.  Caballero contends that it is appropriate to draw an analogy to circumstances involving reappointment.  The Lighton v. University of Utah case involved the property interest of a non-tenured professor in reappointment.  See 209 F.3d at 1221.  The Tenth Circuit found that Dr. Lighton had no property right in his continued employment under Utah law. See id. at 1222.  Caballero urges the Court to extrapolate from Lighton v. University of Utah that a non-tenured, temporary faculty's right to continued employment, in the face of financially exigent circumstances, is similarly dubious under New Mexico law.

The Lighton case is distinguishable from the case at hand.  First, there was no employment contract at issue which involved a specified term, and Dr. Lighton was thus deemed an at-will employee with no right to continued employment in the absence of a termination for cause.  See id. at 1221 ("Dr. Lighton fails to point to any contract showing a specific term of employment existed nor identify any Utah statutes or University policy on which is alleged property interest is grounded. Because insufficient evidence exists in the record to show he possessed a property right to his

continued employment, under either state law or some internal University policy, we cannot conclude any property right existed."). In contrast, Pray's Temporary Contract specified his term of employment with Highlands and incorporated the Regulations which, by their plain language, provided Pray with an expectation of continued employment for one year unless Highlands dismissed him for cause and, therefore, a property interest in that continued employment.

Second, Dr. Lighton voluntarily resigned his position, and the court found that, contrary to his claim, Dr. Lighton was not constructively discharged. There is no allegation in this case that Pray voluntarily resigned.

Caballero contends that, if the question whether non-tenured faculty has a constitutionally protected interest to due process before termination is a close one, then faculty with less expectation to continued employment have no right to procedural due process before termination. Unfortunately for Highlands, given the way that it drafted its Temporary Contract and the Regulations, the issue is not a close one. Pray had a state law created property interest in his contract with Highlands. Caballero's termination of that contract without notice and without a hearing violated his federally protected due process right.

While the Regents had the power to pass a Reduction in Force, it does not follow that the Regents can exercise discretion to take away federally protected property rights with immunity. Highlands could have written its Temporary Contract and Regulations in such a way as to not give Pray a property interest; it could have written them to eliminate the need for due process when acting under a Reduction in Force. Highlands did not structure its relationship with Pray that way.

The Regulations embodied in Pray's contract afforded him as a Highlands employee, laboring under a temporary contract, the right not to be terminated except for cause and then only after notice

19

and hearing.  Pray's contract thus guaranteed him due process rights, even though, and because, he was a non-tenured employee.  Pray has proved an essential element of his section 1983 claim. Accordingly, the Court will not dismiss Pray's Complaint.

**IV.  BECAUSE THE QUESTION REGARDING THE MEANING, AND APPLICATION OF THE REGULATIONS TO PRAY'S CONTRACT IS ONE OF LAW, THE COURT WILL GRANT PARTIAL SUMMARY JUDGMENT ON LIABILITY TO PRAY.**

Pray's Complaint states two causes of action: (i) breach of his Temporary Contract under state law; and (ii) violation of his procedural due process rights under § 1983.  Under New Mexico law, a party breaches a contract by either "failing to perform a contractual obligation when that performance is called for (unless that performance is otherwise excused) or announcing ahead of time that he or she will not perform a contractual obligation when the time for that performance comes due."  UJI (Civil) 13-822 NMRA (2003).  By terminating Pray's Temporary Contract without following the requirements of paragraph 11 in the Regulations, Caballero breached that contract by failing to perform it.  The Court will, therefore, grant summary judgment in favor of Pray on his breach of contract claim.[3]

A plaintiff asserting a violation under Section 1983 must establish the following four elements: "(1) a violation of rights protected by the federal Constitution or created by federal statute or regulation, (2) proximately caused (3) by the conduct of a 'person' (4) who acted under color of any statute, ordinance, regulation, custom[,] or usage, of any State or Territory or the District of Columbia."  Summum v. City of Ogden, 297 F.3d 995, 1000 (10th Cir. 2002)(internal quotation

---

[3] The Court notes this grant of summary judgment regarding Pray's breach of contract claim is only a determination of the liability issue.  As agreed to by the parties at the hearing on this matter, the Court is not addressing Pray's claim for punitive damages for willful breach.  See Transcript of Hearing, Excerpts at 2, lines 17 - 22.

marks and citation omitted).  Pray established each of these elements as a matter of law.

First, Pray established that Caballero breached his employment contract, thereby violating his property interest in continued employment and, therefore, violating his right to procedural due process.  Second, Caballero proximately caused this violation by terminating Pray.  Finally, at the time of the breach, Caballero was a person acting under the color of the state law of New Mexico.

This does not end the Section 1983 inquiry.  Government officials performing discretionary functions generally are shielded from liability for civil damages if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.  See Watson v. University of Utah Med Ctr., 75 F.3d 569, 577 (10th Cir. 1996)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  Once a defendant raises the qualified immunity defense, the plaintiff bears the burden of satisfying a strict two-part test.  See Camfield v. City of Oklahoma City, 248 F.3d 1214, 1225 (10th Cir. 2001).  First, the plaintiff must demonstrate that the defendant's actions violated a constitutional or statutory right.  Second, the plaintiff must show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue.  See id. at 1225 - 1226 (quoting Albright v. Rodriguez, 51 F.3d 1531, 1534 (10th Cir.1995)).

In this case, Caballero has not yet raised a qualified immunity defense; however, to determine whether the Court may grant summary judgment to Pray on all counts of liability, the Court must first consider whether Caballero is entitled to the defense.  While the Court has determined as a matter of law that a constitutional violation occurred when Caballero breached Pray's Temporary Contract thus violating his right to procedural due process, the Court cannot conclude at this point that Pray has fully satisfied the second element of his qualified immunity burden -- that the law was clearly

established.

It is true that the Tenth Circuit in <u>Bailey v. Kirk</u> clearly established that an employment contract that requires termination only for cause creates a property interest in continued employment for the employee.  It is not clear to the Court, however, whether the fact that the employer mistakenly believed that the contract allows for termination in the circumstance of financial exigency creates an issue precluding summary judgment on the "clearly established" element.  Without any briefing on this issue, the Court is reluctant to reject the defense at this stage.

In her Reply, Caballero asserted that the breach in this case was a result of a mistake on the part of Highlands, that Highlands intended to include temporary employees within the reach of the Regulations, allowing Highlands to terminate temporary employees in the case of financial exigency. While a finding of unilateral mistake would not affect the Court's decision in favor of Pray on the breach of contract claim, it might impact the Section 1983 analysis.  It is possible that, if Caballero establishes that she mistakenly believed that the Regulations allowed her to terminate Pray, then her actions in doing so were reasonable and the law was not clearly established.  The Court will not decide that issue now.

The Court will therefore grant only partial summary judgment in favor of Pray on his Section 1983 claim.  The Court finds as a matter of law that Caballero violated Pray's constitutional right to procedural due process.  The Court reserves, however, a determination whether Caballero is entitled to qualified immunity because the constitutional right was not clearly established at the time of the violation.[4]

---

[4] The Court notes that, at the hearing on this matter, Caballero requested and both parties accepted this distinction.  <u>See</u> Transcript of Hearing, Excerpts at 3, line 22 to 4, line 2 ("MS. MAYNES: Is -- There being a constitutional violation, to me, doesn't automatically result in liability.

IT IS ORDERED that the Defendant's Motion for Summary Judgment is denied.[5]  The Court will grant summary judgment to the Plaintiff on his breach of contract claim.  The Court will further grant partial summary judgment to the plaintiff on his Section 1983 claim, finding as a matter of law that the Defendant violated his constitutional right, but will not decide at this time whether the Defendant is entitled to qualified immunity.

_____
UNITED STATES DISTRICT JUDGE

Philip B. Davis
Albuquerque, New Mexico

     *Attorney for the Plaintiff*

Paula G. Maynes
Miller Stratvert P.A.
Santa Fe, New Mexico

     *Attorney for the Defendant*

---

THE COURT: I agree.  MS. MAYNES: And so that distinction being captured in the order would be important to me.  MR. DAVIS: I accept that distinction. I agree.").

   [5]  Caballero asks the Court to award her attorneys' fees and costs associated with bringing this motion.  Given the American Rule, and that Caballero does not cite any exception she comes within, and further given that the Court denied Caballero's motion the Court will deny her request for fees and costs.